**Robert BARNES, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 84–2415.

United States District Court, District of Columbia.

May 15, 1985.

Emilia DiSanto, John C. Morrison, Kiefer & Morrison, Washington, D.C., for plaintiffs.

Metcalfe C. King, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

### INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment. The plaintiffs are employees of the District of Columbia General Hospital ("D.C. General") who receive annuities from the federal government by virtue of their status as retired military personnel. They have filed suit challenging the District of Columbia's ("District" or "D.C.") application of section 1103(b) of the District of Columbia Government Comprehensive Merit Personnel Act of 1978, D.C.Code § 1–612.3(b). As originally enacted, this statute was designed to preclude dual compensation by reducing the salaries of federal and District of Columbia annuitants employed by the District.[1] The statute provided that the total compensation received by a reemployed annuitant could not exceed the amount of the salary he was entitled to receive under the District of Columbia salary schedule. In effect, these individuals would forfeit the portion of their salaries which was equal to their pensions. These restrictions applied equally to individuals receiving annuities under federal or District civilian retirement systems, and those receiving annuities pursuant to the military retirement system. These restrictions were not, however, implemented by the District until 1984, when the plaintiffs and other District employees were notified of the District's intention to enforce the statute prospectively. Shortly thereafter, the

City Council of the District of Columbia amended the statute to provide that the first $51,000 in salary received by retired military personnel was exempt from the statute. This amendment became effective on March 13, 1985, after the required 30-day congressional review period. This temporary legislation will remain in force until September of 1985.

The plaintiffs challenge the statute both as originally enacted and as amended. They argue that it violates the Supremacy Clause and the Contract Clause of the United States Constitution, and is inconsistent with various provisions of local law, including the District of Columbia Self-Government and Governmental Reorganization Act, D.C.Code § 1–201 et seq., D.C.Code § 1–612.1(a)(2), and certain regulations contained in the D.C. Personnel Manual. Finally, they assert that the District of Columbia should be equitably estopped from enforcing or implementing section 1–612.3. Only the claims under the United States Constitution are within this Court's federal jurisdiction; the remainder are properly characterized as pendent claims.[2]

The defendants are the District of Columbia, Mayor Marion Barry, and Edward Conway, the Director of the Personnel and Manpower Division at D.C. General. The individual defendants are sued only in their official capacities. The Court determines that the plaintiffs' constitutional claims are without merit, and dismisses these claims with prejudice. Moreover, the Court declines to exercise jurisdiction over the plaintiffs' pendent local claims. To do so would be an abuse of discretion. The reasons for this determination are set forth below.

### FACTUAL BACKGROUND

The material facts in this case are straightforward and undisputed. The

---

**1.** Subsequent legislative developments have meant that § 1–612.3(c) is the portion of the statute which is now applicable to the plaintiffs. The Court will refer to both versions of the statute as the dual compensation provision, and will generally cite to § 1–612.3, where appropriate.

**2.** Although the plaintiffs' complaint asserts the existence of diversity jurisdiction under 28 U.S.C. § 1332, the discussion *supra* at 15 establishes that diversity jurisdiction does not lie.

plaintiffs are retired military personnel who receive nondisability retirement pay. There are three basic types of military retirement: nondisability retirement, reserve retirement, and disability retirement. Nondisabled retired officers are often referred to as retired regular officers. *See Puglisi v. United States*, 564 F.2d 403, 405, 215 Ct.Cl. 86 (1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978).[3]

Each of the plaintiffs was hired by D.C. General after the enactment of D.C.Code § 1–612.3 in 1979.[4] They responded to a published position vacancy announcement which established a salary range and stated that the District of Columbia was an equal opportunity employer who would consider "all qualified candidates" without regard to a number of factors including "source of income." Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion"), Appendix A, filed Sept. 14, 1984. The plaintiffs were not specifically informed about the statute until June of 1984, when they were notified that "the reduction in your pay by the amount of the annuity you receive will commence on the first day of the first pay period in September 1984 (September 2, 1984)." *Id.*, Appendix B. Similar announcements were sent to all federal and District annuitants employed by the District. In effect, this announcement meant that the salaries of these individuals would be reduced dollar-for-dollar by the amount of their pensions.

The plaintiffs received a short reprieve from this action—until October 14, 1984—so that the Council of the District of Columbia could consider emergency legislation designed to soften the effect of this pay reduction scheme as applied to retired military personnel. On October 25, 1984, the Council enacted temporary legislation, D.C.Law 5–140, which provided that retired military personnel whose combined salary and annuity did not exceed $51,000 were exempt from the pay reduction statute.[5] This amendment did not extend to civilian annuitants. Military personnel whose combined salary and pension exceeded $51,000 were still covered by the statute, and their salaries were reduced by the amount of the excess.

The law was transmitted to Congress for the required 30-day review period. Since the 30-day period expired without congressional action, D.C.Law 5–140 became effective on March 13, 1985. The law will expire in September of 1985.

The plaintiffs have informed the Court that only four of the original plaintiffs are still subject to the pay reduction statute in light of the 1984 amendment. The salaries of the other plaintiffs were presumably paid without reduction. The Court now turns to the constitutional claims raised by

---

**3.** Although the plaintiffs have never clearly stated whether they are retired regular officers or retired reserve officers, the Court assumes that they are retired regular officers because they cite cases which discuss this type of military retiree. *See, e.g., McCarty v. McCarty*, 453 U.S. 210, 213, 101 S.Ct. 2728, 2731, 69 L.Ed.2d 589 (1981). In any event, the disposition of the plaintiffs' claims is the same regardless of the exact nature of their retired status.

**4.** As originally enacted, § 1.612–3(b) provided that

The pay of an individual receiving an annuity under any federal or District government civilian retirement system, or any retirement system of the uniformed services of the United States, selected for employment in the District government on or after the effective date of this chapter, shall be reduced by the amount of annuity allocable to the period of employment as a reemployed annuitant.

As amended, § 1–612.3 now differentiates between civilian (§ 1–612.3(b)) and military (§ 1–612.3(c)) retirees. *See* discussion *supra* at 5.

**5.** The relevant terms of the amendment provide that:

The pay of an individual receiving an annuity under any retirement system of the uniformed services of the United States selected for employment in the District government on or after the effective date of this title shall be reduced by only that amount of the individual's salary which when added to his or her annuity exceeds the basic pay then in effect for step one of a Grade 15 of the District Service Schedule 1.

D.C.Code 1–612.3(c). The parties agree that a Grade 15 employee receives a salary of approximately $51,000.

the remaining plaintiffs. The constitutionality of the law both as enacted and as amended is discussed. In the Court's view, the relevant issues do not differ materially under either version of the statute, and the case is now ripe for decision.

## LEGAL ANALYSIS

### Supremacy Clause

The Supremacy Clause of the United States Constitution provides that "the Constitution and the laws of the United States ... shall be the supreme law of the land." Art. 6, cl. 2. Thus, a state law may violate the Supremacy Clause in one of two ways: it may conflict with the Constitution or with the provisions of a federal statute enacted by Congress. In this case, the plaintiffs assert that the D.C. law conflicts with the federal statutes governing the disposition of military retirement pay.

In determining whether a state statute conflicts with a federal statute and is therefore invalid under the Supremacy Clause, the Court's

> function is to determine whether a challenged state statute 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'

*Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). The Supremacy Clause comes into play "whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Conference of State Bank Supervisors v. Conover*, 710 F.2d 878, 882 (D.C.Cir.1983) (quoting *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

▮ The plaintiffs argue that section 1–612.3 conflicts "with the established congressionally mandated scheme governing voluntary nondisability retirement programs of the Armed Services." Plaintiffs' Motion at 8. This "congressionally mandated scheme," in the plaintiffs' view, arises in part from the federal statutes providing for nondisability retirement pay for retired military officers. *See, e.g.,* 10 U.S.C. §§ 3911, 3929. These statutes cannot, however, be construed to preempt all local statutes which may affect military pensions. Congress itself has provided that retired pay is taxable as ordinary income, *McCarty*, 453 U.S. at 214 n. 7, 101 S.Ct. at 2731 n. 7 (construing 26 U.S.C. § 61(a)(11); 26 C.F.R. § 1.61–11), and state governments are necessarily free to legislate in similar areas.

As additional evidence of congressional intent, the plaintiffs point to the congressional dual compensation scheme which reduces the pay of reemployed federal annuitants by the amount of their annuities. 5 U.S.C. § 8344. The federal statute is strikingly similar to the District's statute, with the exception that retired military personnel are excluded from its reach. Annuitants are former employees, 5 U.S.C. § 8311, and the term "employee" includes civil service employees. *See id.* § 2105. Members of the uniformed services are not considered civil service employees. *Id.* § 2101; *American Federation of Government Employees v. Hoffman*, 543 F.2d 930, 941 (D.C.Cir.1976), *cert. denied*, 430 U.S. 965, 97 S.Ct. 1645, 52 L.Ed.2d 356 (1977).

The plaintiffs argue that section 1–612.3, as originally enacted, violates the Supremacy Clause because it does not provide the same privileges to retired military personnel as does the federal scheme under section 8344. They maintain that even as amended the D.C. statute frustrates congressional intent because it does not go as far as the congressional scheme in protecting the total compensation of reemployed retired military personnel. In the Court's view, the plaintiffs misconceive the role of the Supremacy Clause in serving as a check on local legislation. Local legislation is not preempted by federal law unless it conflicts with a "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Here, the

plaintiffs have cited no statutory language or legislative history which suggests that Congress intended that local governments be precluded from reducing the salaries of retired federal employees who receive military pensions. Section 8344 at most shows Congress' intent to protect the *federal* government salaries of reemployed military personnel; it does not mandate that local governments may not consider these pensions as a factor in setting salaries for their employees.

Nor is there any indication that these federal benefits may not be indirectly reduced by local legislation directed at the salaries of local government employees, unlike the salary reduction scheme in the case primarily relied on by the plaintiffs, *Raskin v. Moran,* 684 F.2d 472 (7th Cir.1982). In *Raskin,* the Court invalidated a Wisconsin statute which reduced the salaries of state reserve judges by an amount equal to their federal social security benefits. The Court relied on section 203(f)(3) of the Social Security Act, 42 U.S.C. § 403(f)(3), which mandated that "income earned after the recipient's 70th birthday [would] not be used to reduce benefits." *Id.* at 474. The Court noted that while the Wisconsin law actually reduced the judges' salaries, it also indirectly reduced the benefits which federal law mandated they receive. *Id.* at 477. The Court held that

> [w]e believe that a state statute which is applied to 'cancel out' the receipt of a protected federal benefit ... clearly stands as an obstacle to frustrate the quite apparent underlying goals of the federal statute.

*Id.* at 480. No such clear goal of protecting federal benefits is articulated in section 8344, which merely sets forth a federal formula for determining the total compensation certain federal employees may receive from the government.

**6.** The *McCarty* decision was superseded by congressional passage of the Uniformed Service Former Spouse Protection Act, 10 U.S.C. § 1408. That statute directs that

> [t]reatment of retired pay ... generally would be dependent on the divorce and property

Nor does the holding in *McCarty, supra* govern the disposition of this case. There, the Supreme Court held that state community property laws may not divest retired regular officers of their pensions. This holding was premised on the direct conflict between federal statutes which allowed retired military personnel to determine exactly how their retirement pay should be allocated to their survivors, *see id.,* 453 U.S. at 224–26, 101 S.Ct. at 2737 (construing Retired Serviceman's Family Protection Plan, 10 U.S.C. §§ 1431–1446; 10 U.S.C. § 2771), and California law, which treated all property acquired during marriage as the property of both spouses. *Id.* at 216, 101 S.Ct. at 2732.[6] No such direct conflict is apparent in this case.

In short, the Supremacy Clause does not prevent the District of Columbia City Council from determining the degree to which retired military or civilian personnel employed by the District shall have their salaries reduced by the receipt of federal or District pensions. Absent a conflict with some other provisions of federal or local law, the District of Columbia is free to fashion its compensation system as it chooses. It may elect to treat retired military and civilian personnel equally, as it did in the original version of § 1–612.3, or it may determine that military personnel are entitled to special privileges, as provided in the recent amendment. § 1–612.3(c).

This conclusion is buttressed by two additional factors which were not briefed by the parties. First, this Court has serious doubts about the extent to which the Supremacy Clause could nullify a District of Columbia law enacted pursuant to the District of Columbia Self-Government and Governmental Reorganization Act, Pub.L. No. 93–198, 87 Stat. 774, D.C.Code §§ 1–201 *et seq.,* subject to the 30-day review period provided by § 1–233(c)(1). Although that Act extends a "measure of home rule"

> laws applied by the courts of the jurisdiction in which a divorce or other related decree is issued.
> S.Rep. No. 502, 97th Cong., 2d Sess., *reprinted in* U.S.Code Cong. & Ad.News, 1555, 1596, 1598.

to the District, *see Don't Tear It Down, Inc. v. Pennsylvania Avenue Development Corp.*, 642 F.2d 527, 530 n. 33 (D.C. Cir.1980), the City Council's legislative authority is still significantly limited by the powers retained by Congress. For instance, Congress possesses

> a substantial role in the legislative process through the 'layover provision' permitting congressional veto or amendment of Council legislation.

*American Federation of Government Employees v. Barry*, 459 A.2d 1045, 1050 (D.C.Ct.App.1983). In this case, the current version of D.C.Code § 1–612.3 was subject to a 30-day period of congressional review. D.C.Code § 1–233(c)(1). It is difficult to reconcile this control exercised by Congress and its implicit approval of the legislation with the concept that a law subject to the 30-day review period violates the Supremacy Clause.[7] While the preemption doctrine may affect District of Columbia regulations which were never reviewed by Congress, *see Firemen's Ins. Co. v. Washington*, 483 F.2d 1323, 1325, 1328–31 (1973), it would seemingly have a lesser effect on enactments which have been implicitly approved by Congress.

Second, Congress has enacted legislation which substantially reduces the retirement pay of retired regular officers of the uniformed services who hold civilian positions with the federal government. Dual Compensation Act of 1964, 5 U.S.C. § 5532. As interpreted in *Puglisi v. United States*, 564 F.2d at 405 n. 1., the Act provides that "a retired regular officer may receive full civilian pay but his retirement pay shall be reduced to an annual rate equal to the first $2,000 of retirement pay plus one-half of any remainder." These provisions do not apply to retired reserve officers, and the exceptions listed in subsections (c) and (d) are not relevant to the present proceeding. Since Congress has itself legislated to reduce the retirement pay of military officers who return to civilian employment with the federal government, it is difficult to discern any congressional intent to preserve intact the government salaries and pensions of reemployed military personnel. The fact that the District of Columbia scheme may reduce the total compensation of some military personnel to a greater extent than the comparable federal scheme does not demonstrate a conflict between the two schemes. Accordingly, the Court concludes that D.C.Code § 1–612.3 survives the plaintiffs' Supremacy Clause challenge.

**Contract Clause**

■ Next, the plaintiffs argue that section 1–612.3 violates the Contract Clause, Art. 1 § 10, cl. 1, which provides that "no state shall ... pass any ... law impairing the obligation of contracts." According to the plaintiffs, the source of this impairment is twofold: first, their contracts with the federal government for retirement pay are impaired because the dual compensation provision "destroys their career expectation of receiving retirement pay upon fulfilling their active duty service commitments." Plaintiffs' Motion at 14. Second, their contracts with D.C. General are impaired because their compensation was reduced several months after they received notice of D.C.'s intention to enforce section 1–612.3 prospectively.

Neither of these arguments is convincing because the plaintiffs have not satisfied the threshold element that the "state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978)). Here, the plaintiffs have proffered no evidence that their "contracts" with the federal government or D.C. have been impaired. Assuming arguendo that military retirees have contracts with the federal government for pen-

---

**7.** Although some dicta in *Don't Tear It Down,* 642 F.2d at 534 n. 65 suggests that "the preemption doctrine effects District of Columbia legislation no less than state enactments," that decision did not address the effect of direct congressional review, which applies to legislation which would otherwise become effective immediately.

sion benefits, a proposition which is extremely doubtful, section 1–612.3 does not impair those contracts because it does not reduce retirees' pensions. Instead, section 1–612.3 operates to reduce the compensation plaintiffs and other retirees will receive from the District of Columbia government.

Nor have the plaintiffs pointed to any impairment of their contracts with D.C. General. As an initial matter, the Court notes that the plaintiffs have neither submitted copies of their contracts with D.C. General nor suggested that the terms of those contracts guaranteed compensation at a given rate now and in the future. The only evidence submitted which is relevant to this inquiry are copies of D.C. General's published vacancy announcements, which set forth a range of compensation for each position. They further provide that D.C. General is "an equal opportunity employer—all qualified candidates will receive consideration without regard" to a number of factors, including "source of income." Appendix A. A description of the factors D.C. General utilizes in its initial hiring decisions and the salary ranges for various positions does not justify an inference that the plaintiffs were guaranteed any particular salary in the future. This inference is particularly unpersuasive because section 1–612.3 was on the books when the plaintiffs were hired. The District chose not to enforce the law until several years after the plaintiffs were hired, and gave the plaintiffs sufficient notice of its decision to enforce the law prospectively. That decision raises no constitutional issue under the Contract Clause.

**Pendent Claims**

■ Lastly, the Court turns to the non-federal claims asserted in Counts 3 through 6 of the complaint. These claims include two claims arising under the D.C.Code: the District of Columbia Self-Government and Governmental Reorganization Act, D.C. Code § 1–201 *et seq.* and D.C.Code § 1–612.1(a)(2), which allegedly guarantees equal pay for equal work, claims under various unenumerated provisions of the D.C. Personnel Manual, and claims that the District of Columbia is equitably estopped from enforcing the dual compensation provision. Although the plaintiffs allege the existence of diversity jurisdiction under 28 U.S.C. § 1332 in their complaint, the District of Columbia government is not a citizen within the meaning of section 1332, *District of Columbia v. L.B. Smith, Inc. of Virginia,* 474 F.Supp. 894, 896–97 (D.D.C.1979), and therefore is not within the reach of the diversity statute. *See also Adden v. Middlebrooks,* 688 F.2d 1147, 1150 (7th Cir.1982); *Lenoir v. Porters Creek Watershed District,* 586 F.2d 1081, 1089 n. 9 (6th Cir.1978). Even if a state were a citizen for purposes of diversity jurisdiction, it would presumably be a citizen of itself. *See L.B. Smith, Inc.,* 474 F.Supp. at 896. Since one of the four remaining plaintiffs is a resident of the District of Columbia, complete diversity does not exist and the Court would in any event lack an independent basis for subject matter jurisdiction over the plaintiffs' local claims. Thus, pendent jurisdiction provides the only possible basis for this Court's determination of the local law claims.

■ In this case, the plaintiffs' claims "derive from a common nucleus of operative fact," *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), which gives this Court the power to decide the local law claims. The Court, however, declines to exercise its discretion to decide these claims. Moreover, it would more than likely be an abuse of discretion to reach out to decide these issues. The plaintiffs' claims under the D.C.Code and the personnel manual involve unexplored questions of state law which are best left to the local courts. In this situation, "a federal District Court opinion is no substitute for an authoritative decision by the courts of the District of Columbia." *Doe v. Board on Professional Responsibility of the District of Columbia Court of Appeals,* 717 F.2d 1424, 1428 (1983) (per curiam) (quoting *Financial General Bankshares, Inc. v. Metzger,* 680 F.2d 768, 778 (D.C.Cir.1982)).

Since these local claims must necessarily be dismissed, judicial economy would not be served by retaining the remaining local claim premised on equitable estoppel.[8]

## CONCLUSION

The plaintiffs' constitutional claims are dismissed for failure to state a claim upon which relief may be granted, and the pendent local law claims are dismissed without prejudice to refiling in the appropriate local forum.

---

8. The Court notes that a very similar equitable estoppel claim, as well as claims based on the Supremacy and Contract Clauses, were decided adversely to a different group of plaintiffs who also challenged the legality of D.C.Code § 1–612.3(b). *Barnes v. District of Columbia,* No. 84–4853 (D.C.Super.Ct. order dated Aug. 21, 1984), *appeal docketed,* No. 84–1193 (D.C.Ct. App. Aug. 30, 1984). Since the Superior Court judge did not set forth his reasons for granting summary judgment to the District of Columbia, this Court has not relied on this precedent to support its decision.