[No. 57875-3.   En Banc.   January 21, 1993.]

ALICE HARRIS, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

462

*Schroeter, Goldmark & Bender* and *Sidney S. Royer,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Maureen A. Mannix, Assistant,* for respondent.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae for appellant.

UTTER, J. — The appellant, Alice Harris, the widow of Jack Harris, challenges a reduction in her husband's workers' compensation benefits pursuant to RCW 51.32.225. RCW 51.32.225(1) provides for a reduction in workers' compensation benefits for those receiving Social Security retirement benefits. It contains an exception to the reduction where a worker was "receiving permanent total disability benefits prior to July 1, 1986." Harris urges this court to construe this exception as including not only workers *actually* receiving benefits prior to July 1, 1986, but also those who are *subsequently* determined to have sustained permanently disabling injuries prior to that date. She also argues the statute violates the equal protection clauses of the federal and state constitutions, as well as the vested rights clause, article 1, section 23 of the state constitution. In addition, amicus Washington State Trial Lawyers Association (hereafter WSTLA) contends that federal law preempts RCW 51.32.225.

We agree with the trial court's conclusion that Harris does not fall within the exception to the offset provision.[1] We also affirm the trial court's conclusion that RCW 51.32-.225 violates neither the vested rights clause of our state constitution nor the equal protection clauses of the state and federal constitutions. In addition, we hold that federal law does not preempt the offset contained in RCW 51.32-.225.

I

The appellant's husband, Jack Harris, filed an industrial insurance claim in June 1979 for work-related injuries caused

---

[1]Harris suggests that there is an ambiguity in the trial court's interpretation of the exception to the offset provision in RCW 51.32.225(1). When read in context, the trial court agreed with the Board of Industrial Insurance Appeals' interpretation of that exception: only those receiving permanent total disability benefits before July 1, 1986, are exempt from the offset.

by exposure to asbestos. The Department of Labor and Industries (hereafter the Department) accepted his claim and began paying Harris *temporary* total disability payments, also known as time-loss orders. Until recently, he received those payments.[2] Harris was examined numerous times from 1979 to 1986. The doctor who examined him repeatedly stated that his condition was permanent and that he did not expect that Harris would be able to return to work. Although Harris might have initiated an inquiry under RCW 51.32.055(2) to determine whether he was entitled to receive *permanent* total disability benefits, he did not do so.

RCW 51.32.225(1), which became effective July 1, 1986, provides:

> For persons receiving compensation for temporary or permanent total disability under this title, the compensation shall be reduced by the department to allow an offset for social security retirement benefits payable under the federal social security, old age survivors, and disability insurance act, 42 U.S.C. This reduction shall not apply to any worker who is receiving permanent total disability benefits prior to July 1, 1986.

During legislative debate, two major justifications for the offset emerged: avoiding duplicative benefits and limiting the cost of industrial insurance. House floor remarks by Representatives Chandler and King on second reading of SHB 1875, 49th Legislature (Feb. 12, 1986).

At the time RCW 51.32.225 became effective, Harris was 75 years old. He was collecting both Federal Social Security retirement benefits and state temporary total disability payments. On August 11, 1986, the Department issued an order reducing Harris's compensation payments by the amount of Social Security retirement benefits he was receiving.

Harris appealed the Department's order to the Board of Industrial Insurance Appeals (hereafter the Board). The Board considered only the statutory construction of RCW 51.32.225. The parties reserved the right to raise questions of fact or other legal and jurisdictional questions in further

---

[2]The day before oral argument Jack Harris's attorney informed the court that he is now dead. Alice Harris was substituted as plaintiff/appellant.

proceedings. The industrial appeals judge affirmed the Department's decision to reduce Harris's temporary total disability benefits by the amount of Social Security retirement benefits Harris was receiving. He found that the exception to the offset provision contained in RCW 51.32.225(1) only applied to those who were actually receiving permanent total disability benefits as of July 1, 1986. Harris sought review by the full Board. On March 1, 1989, the Board affirmed that interpretation of RCW 51.32.225 by a 2-to-1 vote.

Harris appealed the Board's decision to the Superior Court for Mason County. The Department and Harris filed cross motions for summary judgment. Harris argued that the exception to the offset contained in RCW 51.32.225(1) should be construed as including not only those receiving permanent total disability payments as of July 1, 1986, but also those injured prior to that date who would subsequently be deemed eligible for such payments. Harris also argued that RCW 51.32.225 unconstitutionally abrogated vested rights and violated equal protection guaranties of both the federal and state constitutions. No preemption argument was made to the trial court. Harris also countered the Department's contention that reconsideration of unappealed time-loss orders are barred by res judicata.

On November 16, 1990, the Superior Court granted the Department's summary judgment motion. It rejected the constitutional challenges, and affirmed the Board's interpretation of the statute. It also found that unappealed department orders determining disability benefit levels are final and reconsideration of them is barred by res judicata. Harris sought direct review in this court. We accepted review, and now affirm the trial court.

## II

Both federal and state governments have attempted to coordinate benefits paid to workers. In 1965, the federal government, fearing that duplicative state and federal benefits would erode state and federal programs and discourage

workers from returning to work, passed legislation to coordinate benefits. For those under 65, federal law provides that the total of Federal Social Security disability and old-age benefits, when added to state or local workers' compensation, will be reduced if they exceed the higher of (1) 80 percent of the worker's former salary or (2) the total of federal disability and old-age insurance benefits. 42 U.S.C. § 424a(a). The United States Supreme Court rejected a challenge to this federal offset program on due process and equal protection grounds in *Richardson v. Belcher*, 404 U.S. 78, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971).

Several states, including Washington, have passed what are sometimes called "reverse offset provisions" which effectively shift costs back to the federal government by reducing state workers' compensation benefits to account for Federal Social Security benefits. 2 *Social Security Law and Practice* § 26:66 (1987). This court has upheld the validity of RCW 51.32.220, enacted originally in 1975, which reduced state workers' compensation benefits for those under 65 who were receiving federal old-age, survivors or disability benefits. *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 148-49, 736 P.2d 265 (1987). In 1986 the Legislature added RCW 51.32.225, the statute at issue in this case. It allows workers' compensation benefits to be reduced by the amount of Federal Social Security retirement benefits a worker receives. In effect, RCW 51.32.225 extended Washington's reverse offset to cover those 65 and older who receive federal retirement benefits.

## III

We first address the federal preemption argument because it raises the issue of whether the Legislature had the authority to enact RCW 51.32.225.

### A

Amicus WSTLA raises for the first time the argument that RCW 51.32.225 violates the supremacy clause of the federal constitution. This court generally does not consider issues that are raised only by an amicus. *State v. Gonzalez,*

110 Wn.2d 738, 752 n.2, 757 P.2d 925 (1988); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984); *see also* RAP 12.1(a). We do, however, have inherent authority to consider issues not raised by the parties if necessary to reach a proper decision. *Alverado v. WPPSS*, 111 Wn.2d 424, 429-30, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004 (1989); *see also* RAP 12.1(b). This court in *Alverado* decided to consider a federal preemption issue not raised by the parties, noting that there is no dispute about the legal contours of federal preemption doctrine. *Alverado*, at 429-30.

■ Unlike the *Alverado* case, however, the preemption issue was not raised at the trial court. Generally, this court does not consider an issue that was not raised at the trial court. *New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 498, 687 P.2d 212 (1984); *see also* RAP 2.5(a). This court does, however, have discretion to consider issues not raised at the trial court. *Obert v. Environmental Research & Dev. Corp.*, 112 Wn.2d 323, 333, 771 P.2d 340 (1989). It is appropriate to consider the preemption issue in this case inasmuch as numerous similar cases are currently pending that challenge the validity of RCW 51.32.225.

### B

■ Amicus WSTLA argues that federal law expressly or implicitly preempts the offset provision of RCW 51.32.225. We start with the "basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981). Whether federal law preempts state action is largely a matter of statutory construction. L. Tribe, *American Constitutional Law* § 6-26, at 480 (2d ed. 1988).

■ The core of amicus's argument is that 42 U.S.C. § 424a(d) is evidence of congressional intent to preempt state reverse offsets of federal retirement benefits. In order for this court to find preemption under this theory, we must find that "the federal statute *clearly* evinces a congressional intent to preempt state law". (Italics ours.) *State v. Williams*,

94 Wn.2d 531, 538, 617 P.2d 1012, 24 A.L.R.4th 1191 (1980). 42 U.S.C. § 424a(d) provides:

> The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) of this section under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title, and such law or plan so provided on February 18, 1981.

42 U.S.C. § 424a(d). This provision allows states to create a reverse offset for federal disability benefits payable under 42 U.S.C. § 423. The federal government will not impose its own reduction if the state had its reverse offset program in operation as of February 18, 1981. The purpose of 42 U.S.C. § 424a(d) is to avoid a double offset. *Sciarotta v. Bowen*, 837 F.2d 135, 140 (3d Cir. 1988) (quoting *Swain v. Schweiker*, 676 F.2d 543 (11th Cir.), *cert. denied*, 459 U.S. 991, 74 L. Ed. 2d 388, 103 S. Ct. 349 (1982)). The effect of this provision is that it allows the state to shift costs to the federal government through its reverse offset program.

Amicus argues that 42 U.S.C. § 424a(d) only allows states to enact reverse offsets for federal *disability* payments. Because 42 U.S.C. § 424a(d) makes no mention of reverse offsets for federal *retirement* benefits, amicus concludes that Congress intended to prohibit them.

Unlike other benefits cases where preemption has been found, congressional intent to preempt state law is lacking here. For example, in *Rose v. Arkansas State Police*, 479 U.S. 1, 93 L. Ed. 2d 183, 107 S. Ct. 334 (1986) the Court held that Arkansas's attempts to reduce state death benefits under its workers' compensation act by the amount received under the Public Safety Officers Death Benefits Act were preempted. The federal statute explicitly provided that the benefit was to be *in addition* to any other benefits. 42 U.S.C. § 3796(e). In *Raskin v. Moran*, 684 F.2d 472 (7th Cir. 1982), the court held that a Wisconsin statute which reduced state "reserve" judges' salaries by an amount equal

to any Social Security retirement benefits conflicted with federal policy expressed in 42 U.S.C. § 403(f)(3), which prohibits reduction in Social Security benefits of persons over age 70 who continue to earn income. By contrast, 42 U.S.C. § 424a does not contain clear evidence of congressional intent to preempt state reverse offsets of Federal Social Security retirement benefits. We decline to infer preemption from Congress's silence.[3]

In addition, RCW 51.32.225 extended state reverse offsets to include those *65 and older* who receive Federal Social Security retirement benefits. The federal offset provisions contained in 42 U.S.C. § 424a only apply a federal offset to those *under 65*. Accordingly, Congress has expressed no policy on state reverse offsets for federal disability or retirement benefits for those over 65.[4]

█ In *Alverado*, 111 Wn.2d at 431, we noted several other ways in which federal law can preempt state law. First, if Congress indicates an intent to occupy a given field, any state law falling within that field is preempted. Second, state law will also be preempted if it actually conflicts with federal law. Finally, we said that state law is preempted

---

[3]The dissent cites *Kreidler v. Eikenberry*, 111 Wn.2d 828, 835, 766 P.2d 438 (1989) and *State v. Williams*, 94 Wn.2d 531, 537, 617 P.2d 1012 (1980) to support its argument that Congress, by its failure to mention state offsets for retirement benefits, intended to prohibit them. The relevant portions of both these cases only dealt with a principle of statutory construction, namely that *"expressio unius est exclusio alterius"* (express mention of one thing implies exclusion of another). The rules we apply in considering federal preemption issues are different, because we normally require clear expression of congressional intent before we will find preemption.

[4]Amicus correctly notes that the federal largess of 42 U.S.C. § 424a(d) applies only to state reverse offset programs enacted prior to February 18, 1981. 2 *Social Security Law and Practice* § 26:65 (1987); 4 A. Larson, *Workmen's Compensation* § 97.35(a) (1990). The State's first offset provision, RCW 51.32.220, was enacted in 1975, before the cutoff date. Amicus insists, however, that RCW 51.32.225 runs afoul of the time limit because it was enacted in 1986. Amicus fails to note, however, that 42 U.S.C. § 424a applies only to offsets for those under 65. Therefore, this limitation has no effect on state efforts to offset federal benefits paid to those 65 and older. Furthermore, the time limit contained in 42 U.S.C. § 424a(d) only applies to state offsets of disability benefits, not state offsets of retirement benefits.

when it would hinder accomplishment of the purposes and objectives of federal law. *Alverado*, 111 Wn.2d at 431.

■ Amicus focuses solely on 42 U.S.C. § 424a to support its preemption argument. That statute does not express an intent to occupy the field of coordinating benefits. In fact, 42 U.S.C. § 424a(d) provides for some types of state reverse offsets, thus indicating a congressional interest in sharing the field of benefit coordination. Amicus also has not pointed to a conflict between the federal and state statutes. An actual conflict occurs where state and federal statutes are contradictory on their face and compliance with both is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 929, 10 L. Ed. 2d 248, 83 S. Ct. 1210 (1963).[5]

Finally, amicus has not shown that RCW 51.32.225 is at odds with the purposes and objectives of federal law. After all, the statute amicus relies on, 42 U.S.C. § 424a, is clear evidence of Congress's interest in coordinating benefits to avoid duplication.[6] As indicated below in section VI(B), RCW 51.32.225 also avoids duplicative benefits. Therefore, RCW 51.32.225 is consistent with federal policy.

Congress has not made its intent to preempt state law in this area clear. Therefore, we hold that federal law does not preempt RCW 51.32.225.

## IV

After setting forth reductions in temporary and permanent disability compensation for those who receive Social

---

[5]Recently, the United States Supreme Court has stated that the situation where a state law is at odds with the purposes and objectives of federal law should also be deemed a form of preemption through actual conflict. *Wisconsin Pub. Intervenor v. Mortier*, ___ U.S. ___, 115 L. Ed. 2d 532, 111 S. Ct. 2476, 2482 (1991).

[6]The dissent argues the application of an offset to Harris's state disability benefits conflicts with the overall goal of the Social Security Act of "assuring that workers receive their retirement benefits." Dissent, at 488. The dissent does not mention the fact that the level of Harris's retirement benefits remains unaltered. *Raskin v. Moran*, 684 F.2d 472 (7th Cir. 1982) is distinguishable because there Congress expressly stated that there be no reduction in Social Security payments for income earned past the age of 70. Congress has not said the same thing about state disability payments.

Security retirement benefits, RCW 51.32.225(1) provides an exception for those "receiving permanent total disability benefits prior to July 1, 1986." Even though permanent total disability payments were *not actually received* as of July 1, 1986, Harris claims that she should fall within the statutory exception to the offset. Her claim is based on the fact that her husband's allegedly permanent and disabling injuries were sustained prior to July 1, 1986.

██ This court's primary duty in interpreting statutes is to give effect to the Legislature's intent. *WPPSS v. General Elec. Co.*, 113 Wn.2d 288, 778 P.2d 1047 (1989). On its face, the statutory exception appears unambiguous. It simply makes an exception for those who are *receiving* permanent disability benefits as of a certain date. To receive is to "take possession or delivery of" something. *Webster's Third New International Dictionary* 1894 (1976). Jack Harris was not taking possession or delivery of permanent disability benefits on July 1, 1986. He was only receiving temporary total disability payments on that date. He had not even requested a determination as to whether he was permanently disabled under RCW 51.32.055(2). Essentially, the petitioner would have us read the term "receive" to mean "subsequently determined eligible to receive". This would improperly stretch the language of the statute.[7]

In addition, as the Board of Industrial Insurance Appeals indicated, if the Legislature had wanted to broaden the class of individuals that were not subject to the Social Security offset to include those who were injured prior to July 1, 1986, but not found to be permanently and totally disabled until after that date, it could have used language similar to

---

[7]The dissent argues this provision is ambiguous, without demonstrating how one could interpret the term "receiving" differently. It deviates from a fundamental principle of statutory construction: that we will not construe unambiguous language in a statute. *King Cy. v. Taxpayers of King Cy.*, 104 Wn.2d 1, 700 P.2d 1143 (1985). Only if the statute is ambiguous would we be able to employ a liberal construction to it for the benefit of the injured worker. The Department and one member of the Board of Industrial Insurance Appeals made the same error as the dissent by construing language which is clear and unambiguous.

that in RCW 51.32.220(7). In re Social Security Retirement Offset Cases (Board of Industrial Insurance Appeals), at 7. The 1982 amendments to RCW 51.32.220(1) raised the age limit for the disability offset from age 62 to age 65. The Legislature also provided that the change in the law "shall apply with respect to workers whose *effective entitlement* to total disability compensation begins after January 1, 1983." (Italics ours.) RCW 51.32.220(7). As a result, even when a person was placed on the pension rolls *after* January 1, 1983, but that person's effective date of total disability was prior to January 1, 1983, he or she would still be exempt from the expanded disability offset. Therefore, had the Legislature intended to include those who are determined to be eligible to receive benefits subsequent to July 1, 1986, it could have used language similar to that in RCW 51.32.220(7).

We are not persuaded by Harris's three counterarguments. First, she argues that in *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380 P.2d 730 (1963), this court held that workers' rights to compensation vest at the time of their injuries. She also argues that the language of industrial insurance legislation is to be construed liberally in favor of a claimant. Finally, Harris argues that this court should defer to the Department's interpretation of the statute, which coincides with her own interpretation. Given the fact that the statute is not ambiguous, these arguments are not persuasive.

The court in *Ashenbrenner* held only that it would presume the law in effect on the date of an injury controls the rights of a worker absent clear legislative intent to the contrary. That opinion suggests the Legislature can change this rule retrospectively if it clearly expresses an intent to do so. *Ashenbrenner*, 62 Wn.2d at 26-27; *see also Bodine v. Department of Labor & Indus.*, 29 Wn.2d 879, 889, 190 P.2d 89 (1948) (statutes construed prospectively "unless an intent to the contrary has been manifested by the most clear and unequivocal expression"). Unlike the amendments at issue in *Ashenbrenner*, the terms "receiving permanent total disability benefits" in RCW 51.32.225 unambiguously indicate

the Legislature did not intend that the date of injury should govern whether an exception to the offset applies. Therefore, Harris's reliance on *Ashenbrenner* is misplaced.

Next, Harris argues that where an ambiguity exists in industrial insurance legislation, the language is to be construed liberally in favor of the claimant, citing *Sacred Heart Med. Ctr. v. Carrado*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979). Because we find RCW 51.32.225 unambiguous, we cannot construe the statute, and we must simply apply it. *Tacoma Telco Fed. Credit Union v. Edwards*, 94 Wn.2d 666, 669, 619 P.2d 363 (1980); *see also Lowry v. Department of Labor & Indus.*, 21 Wn.2d 538, 542, 151 P.2d 822 (1944) (acknowledging liberal construction in favor of beneficiaries under the workers' compensation act, but refusing to construe a statute that is unambiguous).

Finally, Harris argues that the Department's own policy was that the Social Security retirement offset will not be applied where it determines that an individual is permanently disabled after June 30, 1986. An administrative agency's interpretation of a statute, however, is not relevant in determining legislative intent where a statute is unambiguous. *Lee v. Jacobs*, 81 Wn.2d 937, 940, 506 P.2d 308 (1973).

In this case the Department neither considered nor determined whether Harris was totally and permanently disabled prior to July 1, 1986. Therefore, we hold that Harris does not fall within the exception to the offset provision contained in RCW 51.32.225(1).[8]

## V

Harris next argues that RCW 51.32.225 abrogates vested contractual rights in violation of Const. art. 1, § 23, which provides that "[n]o bill of attainder, ex post facto law, or law

---

[8]The dissent wrongly suggests that Harris is being penalized "based solely on factors beyond [his] control." Dissent, at 483. Jack Harris always had the option to seek a determination of whether his injury was permanent. RCW 51.32.055. He failed to do so. Even though RCW 51.32.055 does not "mandate" that those who are disabled seek a determination of permanent disability, it provides a mechanism whereby an injured worker may secure his or her rights to a level of compensation.

impairing the obligations of contracts shall ever be passed."
In a nutshell, the issue is whether a worker has a vested
contractual right to a certain level of workers' compensation
at the time of an injury.

We have stated the general rule regarding what
rights are vested:

> A vested right, entitled to protection from legislation, must be
> something more than a *mere expectation* based upon an antici-
> pated continuance of the existing law; *it must have become a*
> *title*, legal or equitable, *to the present or future enjoyment of*
> *property, a demand, or a legal exemption from a demand by*
> *another.*

*Godfrey v. State*, 84 Wn.2d 959, 963, 530 P.2d 630 (1975).
The exception to the offset for those receiving permanent
total disability benefits prior to July 1, 1986, eliminates any
infringement upon vested rights. After all, workers actually
receiving permanent total disability benefits prior to July 1,
1986, do not have their benefits offset. As of that date,
Harris had not even initiated an inquiry into whether he
was permanently and totally disabled. Where the Depart-
ment has neither considered nor determined whether a
worker is permanently and totally disabled, that worker has
a future expectation of benefits, not a vested right.[9]

But Harris counters that workers' rights to a level of
compensation vest at the time of injury, relying on *Ashen-
brenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380
P.2d 730 (1963). As we have noted already, *Ashenbrenner*
only required that the Legislature make its intent clear that
its legislation was meant to operate retrospectively. It does
not stand for the proposition that an individual's right to
workers' compensation benefits vests at the time of an
injury. In a different context, this court has stated that with

---

[9]Admittedly, Jack Harris's condition remained essentially the same for 7
years, and yet he was still receiving temporary total disability benefits. It is
arguable that after receiving "temporary" benefits for 7 years, a person has
more than a mere expectation of future benefits. Such an argument, however, is
unpersuasive because Harris could have requested a determination of perma-
nent disability at any time during this period. RCW 51.32.055(2). He failed to do
so.

regard to industrial insurance rights, "the Legislature is perfectly able to designate an effective date other than a date of the injury when it chooses to do so." *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 116 Wn.2d 352, 361, 804 P.2d 621 (1991). Therefore, we find that a worker's right to compensation does not vest at the time of injury.

In addition, the constitutionality of other states' offset provisions has been consistently upheld as against impairment of contract attacks. 4 A. Larson, *Workmen's Compensation* § 97.35(b) (1990) (citing *American Bankers Ins. Co. v. Little*, 393 So. 2d 1063 (Fla. 1980)); *Baker v. List & Clark Constr. Co.*, 222 Kan. 127, 563 P.2d 431 (1977). While Harris does cite some cases from other states suggesting that workers' rights vest at the time of injury, none of them involved a constitutional challenge to state reverse offsets.

Therefore, we hold that RCW 51.32.225(1) does not abrogate a worker's vested rights where the Department neither considered nor determined whether that worker was permanently and totally disabled prior to the passage of that legislation.

## VI

Harris also argues that the offset provision of RCW 51.32-.225 violates equal protection under both the federal and state constitutions. U.S. Const. amend. 14, § 1; Const. art. 1, § 12.[10] The main thrust of Harris's equal protection argument is that the offset provision applies only to Social Security retirement benefits, but not to other benefits or support income. In addition, Harris argues that reducing state *disability* benefits to account for federal *retirement* benefits does not further a legitimate governmental purpose.

## A

The first step in equal protection analysis is determining the standard of review. *State v. Smith*, 93 Wn.2d 329, 610

---

[10]Harris has neither pointed to Washington precedents that would suggest that the state constitution provides greater protection in this case, nor has he briefed the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). We will therefore not address the state constitutional issue without such briefing. *In re Mota*, 114 Wn.2d 465, 472, 788 P.2d 538 (1990).

P.2d 869, *cert. denied*, 449 U.S. 873 (1980). Harris argues that intermediate or strict scrutiny ought to apply to the legislative classifications created by RCW 51.32.225. The case which she relies most heavily on, *Macias v. Department of Labor & Indus.*, 100 Wn.2d 263, 668 P.2d 1278 (1983), is easily distinguishable from this case. In *Macias* workers alleged that a statute which required seasonal workers to earn $150 from each employer to be eligible for workers' compensation violated equal protection. In analyzing the workers' equal protection claims, this court applied strict scrutiny because it penalized, in effect, a worker's fundamental right to travel. *Macias*, 100 Wn.2d at 273. Harris, however, has not shown that any fundamental right is affected by the Social Security offset provision of RCW 51.32-.225. Heightened scrutiny is also appropriate where a "suspect" classification is involved. *Darrin v. Gould*, 85 Wn.2d 859, 865-66, 540 P.2d 882 (1975). Harris has not alleged that RCW 51.32.225 creates a suspect classification based on race, alienage, or national origin.

Because RCW 51.32.225 is economic legislation which neither sets up a suspect class nor affects a fundamental right, rational basis review is appropriate. *Richardson v. Belcher*, 404 U.S. 78, 81, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971); *Conklin v. Shinpoch*, 107 Wn.2d 410, 416-17, 730 P.2d 643 (1986); *Standing v. Department of Labor & Indus.*, 92 Wn.2d 463, 467, 598 P.2d 725 (1979); *Sanchez v. Department of Labor & Indus.*, 39 Wn. App. 80, 88, 692 P.2d 192 (1984), *review denied*, 103 Wn.2d 1039 (1985).

### B

We ask three questions in analyzing equal protection claims under the rational basis test:

1. Does the classification apply alike to all members within the designated class?
2. Do reasonable grounds exist to support a distinction between those within and without each class? and
3. Does the class have a "rational relationship" to the purpose of the legislation?

*Skagit Motel v. Department of Labor & Indus.*, 107 Wn.2d 856, 860, 734 P.2d 478 (1987). Only the second and third questions of the *Skagit Motel* analysis are raised in this case.[11]

Harris raises the second question by arguing that the offset provision in RCW 51.32.225 violates equal protection by applying only to Social Security retirement benefits, but not to benefits or support income received from another source. Similar setoffs, however, have withstood equal protection attacks. For example, in *Richardson v. Belcher*, 404 U.S. 78, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971), the Court held that the federal government's offset provision did not violate equal protection. In *Richardson* the Court declined to consider a similar argument:

> We have no occasion, within our limited function under the Constitution, to consider whether the legitimate purposes of Congress might have been better served by applying the same offset to recipients of private insurance . . ..

404 U.S. at 84. We approved the reasoning of *Richardson* in *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 736 P.2d 265 (1987). *See also Boehm v. Industrial Comm'n*, 738 P.2d 804, 806-07 (Colo. Ct. App. 1987).

The Court's reasoning in *Richardson* is similar to a principle this court recognizes in equal protection cases: that the Legislature may address a problem in a piecemeal fashion without violating an individual's rights under equal protection. *Crown Zellerbach Corp. v. Department of Labor & Indus.*, 98 Wn.2d 102, 653 P.2d 626 (1982). Therefore, the offset provision does not violate equal protection because it

---

[11]Briefing and argument was presented in this case under the 3-part rational basis test in *Skagit Motel*. We will accordingly apply the 3-part test in this case. We note, however, that this court has recently applied a 1-part rational basis test in a case decided under the federal equal protection clause, and that this 1-part test is more consistent with federal precedent. *See Foley v. Department of Fisheries*, 119 Wn.2d 783, 837 P.2d 14 (1992) (citing *Burlington Northern R.R. v. Ford*, ___ U.S. ___, 119 L. Ed. 2d 432, 112 S. Ct. 2184, 2186 (1992)); *see also State v. Coria*, 120 Wn.2d 156, 171-72, 839 P.2d 190 (1992)). We would, however, reach the same result in this case under either test.

applies only to Social Security retirement benefits, and not to private pensions or other sources of benefits.

Harris, however, attempts to distinguish *Ravsten* and *Richardson* by arguing that those cases involved state and federal efforts to offset *disability* benefits. In both cases, governmental efforts to avoid duplication of disability benefits were deemed legitimate legislative purposes. The legislative history of RCW 51.32.225 suggests that avoiding duplication in benefits or "double dipping" was a major factor behind the statute. House floor remarks by Representatives Chandler and King, on second reading of SHB 1875, 49th Legislature (Feb. 12, 1986). Harris argues that RCW 51.32.225, unlike the statutes considered in *Ravsten* and *Richardson*, reduces state *disability* payments to account for federal *retirement* benefits. Harris argues that the purposes of disability and retirement benefits are distinct. Thus, Harris concludes RCW 51.32.225 does not serve a legitimate purpose because it does not avoid duplication benefits. Essentially, this raises the third question of the *Skagit Motel* equal protection analysis: Does the classification have a rational relation to the purpose of the statute?

Other state courts have considered the legitimacy of "duplication of benefits" rationales for offsets or reductions of benefits in similar contexts, and have reached different results. For example, the Supreme Court of Florida in *Sasso v. Ram Property Mgt.*, 452 So. 2d 932 (Fla.), *appeal dismissed*, 469 U.S. 1030 (1984) considered the validity of a Florida statute which provided that wage-loss benefits terminated when an injured employee reached age 65. The court affirmed the trial court's conclusion that the exclusion of those over 65 was not rationally related to the prevention of "double dipping" because Social Security retirement benefits do not serve the same purpose as wage-loss benefits. *Sasso*, 452 So. 2d at 934 n.3. The court in *Sasso*, however, found that there were other legitimate purposes for termination of benefits, such as reducing fringe benefits to reflect a productivity decline with

age, inducing older workers to retire, and reducing the cost of workers' compensation premiums. 452 So. 2d at 934 n.3.

On the other hand, in *Brown v. Goodyear Tire & Rubber Co.*, 3 Kan. App. 2d 648, 599 P.2d 1031 (1979), *aff'd*, 227 Kan. 645, 608 P.2d 1356, *appeal dismissed*, 449 U.S. 914 (1980), the court found that termination of state disability benefits from the date a claimant becomes entitled to old-age Social Security benefits did not create an arbitrary classification lacking rational justification. The court in *Brown* characterized the disability benefits as a form of wage-loss protection, and found termination of those benefits to be a rational way of avoiding duplicative benefits. *See also Baker v. List & Clark Constr. Co.*, 222 Kan. 127, 130-32, 563 P.2d 431, 434-35 (1977) (holding that reduction in workers' compensation benefits due to dependents of deceased employee if dependents are also receiving Social Security benefits did not violate equal protection). The *Brown* and *Baker* decisions are consistent with the view of a leading treatise on workers' compensation:

> Wage-loss legislation is designed to restore to the worker a portion, such as one-half to two-thirds, of wages lost due to the three major causes of wage-loss: physical disability, economic unemployment, and old age. The crucial operative fact is that of wage loss; the cause of the wage loss merely dictates the category of legislation applicable. Now if a workman undergoes a period of wage loss due to all three conditions, it does not follow that he should receive three sets of benefits simultaneously and thereby recover more than his actual wage. He is experiencing only one wage loss and, in any logical system, should receive only one wage-loss benefit. . . .

(Footnote omitted.) 4 A. Larson, *Workmen's Compensation* § 97.10 (1990). We find Larson's analysis persuasive. State disability benefits and federal old-age Social Security benefits serve the same purpose: to restore earnings due to wage loss. The cause of wage loss — whether it be old age, disability, or unemployment — is irrelevant. RCW 51.32.225 serves a legitimate purpose in avoiding duplication of benefits. In addition, during discussion of the bill in the State Legislature other legitimate reasons for the offset were mentioned. Saving money for the state fund and reducing industrial

insurance premiums were also on the minds of legislators. House floor remarks by Representatives Chandler and King, *supra*.[12]

There were several legitimate reasons for the Legislature to enact RCW 51.32.225. RCW 51.32.225 does not violate the equal protection clauses of the state and federal constitutions.

## VII

█ Harris argues that the trial court should not have determined the res judicata effect of unappealed temporary total disability payments, also known as time-loss orders, which Harris received. The Department has not responded to this argument. Harris argues that the parties entered a stipulation to the effect that this issue would be reserved until litigation on the other issues was resolved. The stipulation does suggest that the parties intended to reserve this issue. Nevertheless, Harris argued this issue on summary judgment at the trial court level. It does not appear from the record that petitioner objected to the trial court considering this issue. Generally, issues not raised at the trial court cannot be raised on appeal. *New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 498, 687 P.2d 212 (1984); *see also* RAP 2.5(a). Because Harris did not object to consideration of the effect of unappealed time-loss orders at the trial court, we decline to consider this argument.

---

[12]We have recently cautioned that a legislator's comments from the floor of the Legislature are not necessarily indicative of legislative intent. *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 63, 821 P.2d 18 (1991) (citing *North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326-27, 759 P.2d 405 (1988)). We emphasize that we do not rest our conclusion that RCW 51.32.225 is constitutional solely on the floor remarks of legislators. Unlike *Wilmot* and *North Coast Air Servs.*, we are not being called upon to use floor remarks to interpret a statute. Instead, we use them to determine whether there was any conceivable justification for the classification created by RCW 51.32.225. We have stated that where finite state resources are involved, a statutory discrimination "will not be set aside if *any state of facts* reasonably may be conceived to justify it.'" *Caughey v. Employment Sec. Dep't*, 81 Wn.2d 597, 599, 503 P.2d 460, 56 A.L.R.3d 513 (1972) (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970)).

We affirm the trial court's decision granting summary judgment for the Department.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and SMITH, JJ., concur.

JOHNSON, J. (dissenting) — The majority holds that the State may reduce an injured worker's compensation if that worker also receives Social Security retirement funds. I dissent from that holding for three reasons. First, because the majority selects the wrong date for determination of permanent disability, the majority's interpretation of the relevant statutes works an injustice on injured workers. Second, the majority ignores our statutory mandate to interpret the Industrial Insurance Act (Act) liberally in favor of the injured worker. Finally, the majority's holding conflicts with the congressional purpose behind the Social Security Act, which I would hold preempts the state statute.

I

In concluding that the Department of Labor and Industries (Department) may reduce Harris's workers' compensation benefits by the amount of Social Security retirement funds Harris receives, the majority works an injustice on Harris and all similarly situated injured workers. Harris became totally disabled in 1979 because of work-related exposure to asbestos. He was 68 years old at the time of his disability and, despite the fact that his disability was never adjudicated as permanent, it is clear from the evaluations of his doctor that as of August 1981 Harris would never recover. See majority, at 464-65; Clerk's Papers, at 127. In 1986 the Department, pursuant to RCW 51.32.225, reduced Harris's disability award by $213.60 per month, the amount of Social Security retirement that he received. The reduction left Harris with a disability award of $955.09 per month. Clerk's Papers, at 77. The majority today approves of that reduction simply because Harris was not yet actually receiving a permanent total disability award as of June 30, 1986.

In so doing, the majority unfairly penalizes workers who were in fact permanently disabled prior to that date.

The majority prohibits Harris and others similarly situated from litigating the question of whether they were permanently disabled prior to the cutoff date. According to the majority, the only relevant question is whether the injured worker was *actually* receiving, by Department adjudication order, permanent disability payments as of June 30, 1986. This interpretation leads to the absurd result that two workers who were *in fact* permanently disabled on the same date could receive drastically different compensation based solely on factors beyond their control. For example, if the Department had acted slowly on a particular claim and did not adjudicate permanency until after the cutoff date, that worker would receive less compensation than a worker whose claim was quickly adjudicated, even if both became permanently disabled on the same date. A similar result would occur if the Department initially wrongfully denied a worker's claim. In such a case, a worker would be subject to the offset, and thus receive less compensation, solely because the Department forced that worker to litigate his or her entitlement to those benefits. Statutes should be construed so as to avoid unlikely or absurd consequences. *Ski Acres, Inc. v. Kittitas Cy.*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992). Therefore we should interpret the Act to avoid such potentially absurd results as those described above.

The exemption in RCW 51.32.225 applies to any worker who was in fact permanently disabled prior to July 1, 1986. To apply that exemption, this court must first determine when permanent disability occurs. I would hold that such a determination should focus on the worker's injury as determined by medical evaluation when permanent disability occurs — not, as the majority holds, when the Department eventually adjudicates the question of permanent disability. My interpretation recognizes the practical consideration which drives all disability claims, a consideration the majority ignores: the injury itself controls all aspects of the claim. Thus benefits should be determined by the medical reports

which would substantiate the worker's condition in determining the date of permanent disability, not by the date of adjudication.

My interpretation is consistent with our longstanding statutorily mandated policy that:

> the guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered employees injured in their employment, with doubts resolved in favor of the worker.

*Dennis v. Department of Labor & Indus.,* 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *see also* RCW 51.12.010 ("This title shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . in the course of employment."). The majority dismisses the liberal construction mandate by concluding that the statute is not ambiguous. See majority, at 473. I disagree.

A statute is ambiguous if its language is susceptible to more than one meaning. *Yakima v. International Ass'n of Fire Fighters, Local 469,* 117 Wn.2d 655, 669, 818 P.2d 1076 (1991). The record reflects that the Department previously interpreted and applied RCW 51.32.225 in much the same way as Harris argues it should be interpreted. *See* Department Policy on Application of Retirement Offset (Dec. 3, 1986); Clerk's Papers, at 64. Additionally, the Board of Industrial Insurance Appeals (BIIA) split 2 to 1 on how to interpret the statute. Clerk's Papers, at 39. These two facts are clear evidence that the statute is ambiguous.

My interpretation of the statute recognizes the reality of the administrative procedures within which the statute operates. Administrative delay is built into the system. It is not uncommon for the Department to take several months to adjudicate a disability claim. Clerk's Papers, at 39. This is especially true in cases involving self-insured employers, since the bulk of the administrative work in those cases is done by the employer. Injured workers should not be penalized for administrative delay. Accordingly, the Department

has established procedures for placing the worker on the pension rolls retroactively. Clerk's Papers, at 39. This retroactivity procedure is necessary for a fair and just treatment of the disabled worker, and it insures that workers are not unfairly penalized for administrative delay.

The majority's interpretation, however, undermines both the retroactivity procedure and the Act. That interpretation penalizes the worker who was permanently disabled prior to July 1, 1986, if the administrative delay extended beyond the cutoff date. Thus, the majority ignores the administrative reality of the disability pension system and unfairly penalizes workers for delays beyond the workers' control.

The majority implies that because Harris did not seek a determination of permanent disability under RCW 51.32-.055(2) prior to July 1, 1986, appellant cannot now argue that Harris was in fact permanently disabled before that date. See majority, at 472, 475 n.9. The majority's reasoning ignores the fact that Harris had no reason to seek such a determination. He had been receiving "time loss" checks for several years. The Department never notified Harris that it would reduce the amount of his award if he did not seek a determination of permanent disability. He thus had no reason to seek a determination of permanent disability.

The practical result of the majority's argument is that Harris's compensation is reduced because he did not request a determination of permanent disability. The statute the majority relies on, however, does not require Harris to seek such a determination. This statute provides that

[e]ither the worker, employer, or self-insurer *may* make a request [for a determination of permanent disability] or such inquiry may be initiated by the director [of the Department of Labor and Industries] on his or her own motion.

(Italics mine.) RCW 51.32.055(2). As a matter of statutory interpretation, we cannot penalize Harris for failing to seek a determination of permanent disability when the statute does not mandate that he do so. To the extent that the statute places a burden on anyone, then under our rule of liberal construction that burden should be on the Depart-

ment. There is no justification for concluding that RCW 51.32.055(2) requires a worker to request a determination of permanent disability or face the consequences of reduced benefits under the Social Security offset.

## II

I also disagree with the majority's conclusion on the preemption issue. Federal preemption of state laws occurs whenever there is a conflict between state and federal statutes such that the state law is an obstacle to the full accomplishment of Congressional objectives. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982); *see generally* L. Tribe, *American Constitutional Law* §§ 6-25 through 6-26 (2d ed. 1988). RCW 51.32-.225 is preempted because it conflicts with both the federal reverse offset provision and the overall purposes of the Social Security Act.

The amicus, Washington State Trial Lawyers Association, correctly points out that Congress's limitation of the use of reverse offsets to the field of disability law preempts RCW 51.32.225. Federal law authorizes states to reduce state workers' compensation benefits by the amount of federal *disability* benefits a claimant receives. *See* 42 U.S.C. § 424a(d). That statute does not authorize, and does not even mention, offsets for federal *retirement* benefits. Furthermore, § 424a only applies to injured workers under the age of 65. Thus it does not, on its face, authorize a state offset for those who, like Harris, are over 65. Because Congress expressly authorized reverse offsets only for disability benefits and only for recipients under the age of 65, we can infer that it did not intend to allow states to offset federal *retirement* benefits. *See Kreidler v. Eikenberry,* 111 Wn.2d 828, 835, 766 P.2d 438 (1989) (express mention of one thing in a statute implies the exclusion of other things not mentioned); *State v. Williams,* 94 Wn.2d 531, 537, 617 P.2d 1012 (1980) (when a statute specifically designates one class of things upon which it operates, it can be inferred the Legislature intended to omit all other

classes unless such an interpretation would defeat clear legislative intent). The language of 42 U.S.C. § 424a(d) clearly expresses congressional intent to only provide for state offset of disability benefits, and I would hold it preempts any state attempt to extend offsets to other types of federal benefits.

The easy question on preemption is how we would view RCW 51.32.225 if the Legislature had failed to adopt it within the "window" period allowed by 42 U.S.C. § 424a(d). The answer certainly would be that since Congress did not specifically allow any state offsets other than those enacted prior to February 18, 1981, any such legislation would fail due to preemption. 2 *Social Security Law and Practice* § 26:65, at 43-44 (1987). Similarly, because Congress did not authorize any offset other than one for disability compensation, RCW 51.32.225 is preempted.

The purposes underlying the enactment of 42 U.S.C. § 424a support that interpretation. The overall purpose of § 424a is to avoid "duplication of *disability* benefits". (Italics mine.) S. Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S. Code Cong. & Ad. News 1943, 1944. Congress was concerned that an employee who collected both state and federal disability might receive more money than if he or she were working and therefore have no incentive to rehabilitate and return to work. *Richardson v. Belcher,* 404 U.S. 78, 82-83, 30 L. Ed. 2d 231, 92 S. Ct. 254 (1971). Those concerns are not present in the case of retired workers such as Harris. Harris is not collecting duplicate *disability* benefits. He receives state disability benefits and federal retirement benefits, and he is entitled to both.

The majority's conclusion that disability benefits and retirement benefits are essentially the same for offset purposes, see majority, at 480, ignores important historical and policy differences between the two types of benefits. Federal retirement benefits, or "old age security", have been a part of the Social Security Act since its inception in the 1930's. *See generally* R. Stevens, *Statutory History of the United States: Income Security* (1970). Disability benefits were not added

until 1956. *Statutory History,* at 505. Retirement benefits are designed "to assure support for the aged as a right rather than as a public charity, and in amounts which will insure not merely subsistence but some of the comforts of life . . .." H.R. Rep. No. 615 (Economic Security Bill), 74th Cong., 1st Sess. (1935), *quoted in Statutory History,* at 147. Disability benefits, on the other hand, were added to the Social Security Act out of a concern that state workers' compensation benefits were inadequate to compensate injured workers for their loss. *Statutory History,* at 501. Thus, the two types of benefits have different histories and different purposes. This court should not ignore those differences in attempting to justify RCW 51.32.225.

Congress specifically authorized reverse offsets only of *disability* benefits. Because, as the majority acknowledges, RCW 51.32.225 extends Washington's reverse offset to cover retirement benefits, majority, at 467, that statute conflicts with 42 U.S.C. § 424a(d), and is preempted.

RCW 51.32.225 is also preempted because it conflicts with the overall goals of the Social Security Act. Federal law preempts any state law that is an obstacle to the full accomplishment of congressional objectives. *Fidelity Fed. Sav.,* 458 U.S. at 153. Congress's objective in establishing federal retirement benefits was to assure retired workers of an adequate income. The retirement program should be construed liberally in favor of the retired worker. *Tsosie v. Califano,* 651 F.2d 719, 723 (10th Cir. 1981); *Delno v. Celebrezze,* 347 F.2d 159, 162 (9th Cir. 1965). Thus we should start with the premise that the worker is entitled to his or her federal retirement benefit unless a specific exception clearly applies. Because no such exception exists in this case, RCW 51.32.225 hinders the full accomplishment of the congressional objective of assuring that workers receive their retirement benefits.

*Raskin v. Moran,* 684 F.2d 472 (7th Cir. 1982) supports this conclusion. The plaintiffs in *Raskin* challenged a Wisconsin statute that reduced certain judges' salaries by an amount

equal to the Federal Social Security retirement benefits they received. The Court of Appeals for the Seventh Circuit ruled that the Wisconsin statute conflicted with the goals of the Social Security Act, and was therefore preempted. *Raskin*, at 477. Specifically, the court held that the statute conflicted with a provision of the Social Security Act that prohibits any reduction in Social Security benefits for income earned past the age of 70. *Raskin*, at 478. The Social Security Act did not, however, expressly prohibit the application of the Wisconsin statute, and that statute did not directly prevent or impede the receipt of the benefits. *Raskin*, at 476-77. Instead, the Wisconsin statute thwarted the federal policy because the statute effectively deprived recipients of federal benefits. *Raskin*, at 477-78. The purposes of the Social Security Act were thwarted because "the federal government put[] money in the plaintiffs' left pocket while [the state took] a precisely equal amount of money from their right pocket *solely because* the money was received through the social security program." *Raskin*, at 479-80. This analysis applies equally to our case.

RCW 51.32.225 thwarts the objectives of the Social Security Act. Congress intended for qualified workers to receive federal benefits upon their retirement, unless specific provisions of the Social Security Act provide otherwise. The challenged statute allows the state to take from the worker's right pocket what the federal government put in the left pocket. Because that action is not specifically authorized by Congress, RCW 51.32.225 conflicts with the federal act and is preempted.

CONCLUSION

I would hold that RCW 51.32.225 is preempted by federal law, and that the Department is therefore prohibited from offsetting federal retirement benefits. Alternatively, I would hold that the exemption to RCW 51.32.225 should be interpreted to apply to all workers who can prove they were permanently disabled prior to July 1, 1986. In either case, I would reverse the granting of the Department's motion for

summary judgment and remand for further proceedings consistent with this opinion.