834 So.2d 352 (2003)
Winton HARRELL, Appellant,
v.
FLORIDA CONSTRUCTION SPECIALISTS/AARLA/AGENT FOR FWCIGA, Appellee,
and
Arthur Myers, Appellant,
v.
City of North Miami and Integrated Ins. Co., Appellees.
Nos. 1D01-3512, 1D02-368.
District Court of Appeal of Florida, First District.
January 8, 2003.
*353 Arthur C. Beal, Jr., of Arthur C. Beal, Jr., Tallahassee; and Richard A. Sicking of Richard A. Sicking, P.A., Coral Gables, for Appellant in No. 1D01-3512.
*354 Mary L. Wakeman of McConnaughhay, Duffy, Coonrod, Pope & Weaver, P.A., Tallahassee, for Appellee in No. 1D01-3512.
Richard A. Sicking of Richard A. Sicking, P.A., Coral Gables, for Appellant in No. 1D02-368.
William C. Robinson, Miami, for Appellees in No. 1D02-368.
DAVIS, J.
Appellants/claimants, Arthur Myers and Winton Harrell, appeal orders of the judges of compensation claims holding that because appellants were injured and reached permanent total disability (PTD) prior to age sixty-two, they were not entitled to supplemental benefits after age sixty-five. In this consolidated appeal, appellants also challenge the constitutionality of section 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995), the authority for the termination of appellants' supplemental benefits, on supremacy clause and equal protection grounds. We affirm for the reasons set forth in this opinion.
Appellants both suffered industrial accidents rendering them permanently and totally disabled before the age of sixty-two. Both appellants collected disability payments and both insurance carriers terminated the payments of supplemental benefits for PTD on the basis of section 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995), respectively.[1] Appellants sought payment of the supplemental benefits for PTD after they reached the age of sixty-five, and the respective judges of compensation claims denied appellants' claims pursuant to this court's opinion in Wilkins v. Broward County School Board, 754 So.2d 50, 52 (Fla. 1st DCA 2000), rev. den., 766 So.2d 224 (Fla.2000) (holding that "where a claimant is injured and reaches PTD prior to age 62, the claimant is not entitled to supplemental benefits after age 65."). Appellants initially sought reversal of the JCC's denial of benefits on the grounds that Wilkins was not controlling because there was a horizontal conflict between sections 440.15(1)(e)1. and 440.15(10), or that there was a vertical conflict between section 440.15(1)(e)1. and 42 U.S.C. section 424a. Appellants' counsel, however, properly conceded at oral argument that should this court reject the constitutional challenges to the statutes at issue, Wilkins does control and stare decisis requires this court to affirm the orders.
Appellants contend that section 440.15(1)(e)1., Florida Statutes (1991) and section 440.15(1)(f)1., Florida Statutes (1995), as construed by this court, are in violation of the supremacy clause of the United States Constitution and/or their equal protection rights. The JCCs properly found that they lacked jurisdiction to determine whether the statutes are unconstitutional. Hensley v. Punta Gorda, 686 So.2d 724, 725 (Fla. 1st DCA 1997) ("As an administrative officer vested with only certain limited quasi-judicial powers, a judge of compensation claims does not have jurisdiction to declare a portion of the Florida Workers' Compensation Act unconstitutional or violative of a federal statute.") (citing Sasso v. Ram Prop. Mgmt., 431 So.2d 204, 207-208 (Fla. 1st DCA 1983), approved 452 So.2d 932 (Fla.1984)); Bradley v. Hurricane Rest., 670 So.2d 162, 164 (Fla. 1st DCA 1996). Appellants' constitutional *355 challenges to the statutes are, therefore, properly before this court. Sasso, 431 So.2d at 208.
Appellants first contend that the termination of benefits under sections 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995) is precluded by the Supremacy Clause of the United States Constitution because the statutes are preempted by federal law, specifically, 42 U.S.C. section 424a(d). The Supremacy Clause, found in article VI, clause 2 of the United States Constitution, provides that:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
U.S. Const. art. VI, cl. 2. "Consequently, Congress has the constitutional power to preempt state law." United States v. Lot 5, Fox Grove, Alachua County, Fla., 23 F.3d 359, 361 (11th Cir.1994) (citing Louisiana Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)).
Prior to 1981, the Social Security Act contained a provision for the coordination of workers' compensation disability benefits with social security disability benefits by providing that the combination of the two benefits could not exceed 80% of a claimant's average current earnings. If the benefits exceeded the 80% cap, the social security benefits would be offset to the 80% level. 42 U.S.C. § 424a(a) (1976). This coordination of benefits, however, contained an exception which allowed the states to choose their own method of coordinating both workers' compensation and social security benefits. That coordination of benefits has become known as a "reverse offset," and it enables states to reduce the amount of workers' compensation payments by making social security benefits payable before the workers' compensation benefits. Florida was among the states which exercised the option to reverse the federal offset by enacting section 440.15(10), Florida Statutes (1980). Under section 440.15(10), the combination of workers' compensation benefits and social security benefits could not exceed 80% of an employee's average weekly wage. The social security benefit is paid first, and the "offset," if any, inures to the benefit of the employer/carrier at the 80% level. The offset ceases at age sixty-two.
In 1981, Congress amended 42 U.S.C. section 424a, as found in the Omnibus Budget Reconciliation Act of 1981. Congress changed the age during which the reduction of social security benefits could be made on account of the receipt of workers' compensation benefits from age sixty-two to age sixty-five. Congress also added the following language to 42 U.S.C. section 424a:
(d) Exception
The reduction of benefits required by this section shall not be made if the law or plan described in subsection (a)(2) of this section under which a periodic benefit is payable provides for the reduction thereof when anyone is entitled to benefits under this subchapter on the basis of the wages and self-employment income of an individual entitled to benefits under section 423 of this title, and such law or plan so provided on February 18, 1981.
Through this amendment, Congress abolished the reverse offset for those states that had not already enacted laws for such an offset. The states, including Florida, that had already enacted reverse offset *356 provisions were "grandfathered" in and allowed to continue to apply reverse offsets, i.e., reduce workers' compensation benefits on account of the receipt of social security benefits.
Appellants challenge the validity of section 440.15(1)(e)1. which was first enacted in 1990 and provides for the cessation of the supplemental benefits for PTD upon an employee's sixty-second birthday. Appellants argue that the statute operates as a reverse offset under section 440.15(10) because it reduces the workers' compensation benefits on account of the receipt of social security benefits, and that Florida cannot reduce such benefits unless the offset was a law in 1981. We hold that the termination of supplemental benefits pursuant to 440.15(1)(e)1., Florida Statutes (1991) and section 440.15(1)(f)1., Florida Statutes (1995) is not a reverse offset pursuant to section 440.15(10), and therefore, is not in conflict with 42 U.S.C. 424. Based on the analysis that follows, we find that the statutory provisions are also not preempted by 42 U.S.C. section 424a(d).
Congress's constitutional power to preempt state law is not unlimited. "A federal statute does not supersede state law unless that is the clear and whole purpose of Congress." Lot 5, 23 F.3d at 361 (citing Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)). In Cipollone, the United States Supreme Court recognized that consideration of issues arising under the Supremacy Clause begins with the "assumption that the historic police powers of the States [are] not to be superseded by... Federal Act unless that [is] the clear and manifest purpose of Congress." 505 U.S. at 516, 112 S.Ct. 2608 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). "Accordingly, the purpose of Congress is the ultimate touchstone of pre-emption analysis." Id. (citations and internal quotations omitted).
The intent of Congress may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Id. (citation and internal quotations omitted). Further, in the absence of an express command by Congress, state law will be pre-empted if the law "actually conflicts with federal law (citation omitted) or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." Id. (citations and internal quotations omitted).
In State v. Stepansky, 761 So.2d 1027 (Fla.2000), the Florida Supreme Court noted several ways in which federal law can preempt state law. First, if the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it; second, if the federal legislation touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject; or third, the "object sought" by the federal legislation may reveal the same purpose. Id. at 1033-1034 (citations omitted). The exception created by Congress in 42 U.S.C. 424a(d) is not so pervasive as to require this court to infer that Congress intended to preclude the State of Florida from ever terminating benefits such as those terminated by 440.15(1)(e)1., Florida Statutes (1991) and section 440.15(1)(f)1., Florida Statutes (1995), and not offset by section 440.15(10). To the contrary, it seems clear that the purpose of 42 U.S.C. section 424a(d) was to avoid a double offset by allowing the states to shift costs to the federal government through a reverse offset program. Harris v. State of Washington, 120 Wash.2d 461, 843 P.2d 1056, 1060 (1993) (citing Sciarotta v. Bowen, 837 F.2d *357 135, 140 (3d Cir.1988) (quoting Swain v. Schweiker, 676 F.2d 543 (11th Cir.), cert. denied, 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982))).
In Harris, the Supreme Court of Washington rejected a similar challenge after a thorough analysis of the issue. The argument advanced in Harris is similar to the one made before this court, i.e., that 42 U.S.C. section 424a(d) is evidence of congressional intent to preempt state reverse offsets of federal benefits. As found in Harris, 42 U.S.C. section 424a not only fails to express an intent to occupy the field of coordinating benefits, it "provides for some types of state reverse offsets, thus indicating a Congressional interest in sharing the field of benefit coordination." Id. at 1061 (emphasis supplied).
We find no inconsistency between the Florida statutes and the purposes and objectives of the federal law, 42 U.S.C. section 424a, which explicitly coordinates benefits to avoid duplication. The Florida statutes, by avoiding duplicative benefits, are consistent with federal law. We hold that 42 U.S.C. section 424a does not preempt sections 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995).
Appellants alternatively argue that the cessation of the cost of living supplements for PTD, under sections 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995), violates the constitutional guarantees of equal protection of the law. The equal protection clauses of the state and federal constitutions guarantee that all citizens similarly situated be treated alike. Art. I, § 2, Fla. Const.; U.S. Const. amend. XIV, § 1. Because appellants' challenge is based on age discrimination, it is subject to the rational basis review.[2]
We find that the termination of PTD supplemental benefits at the age of sixty-two, pursuant to sections 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995), survives the rational basis test because it is reasonably related to a permissible government objective. In Wilkins, this court noted that the legislature "could have legitimately assumed that in these cases [where a claimant is injured and reaches PTD prior to age 62] a claimant would not continue to work after a traditional retirement age." 754 So.2d at 52. Further, the Final Staff Analysis and Economic Impact Statement for the original enactment of the statutory language at issue in section 440.15(1)(e)1. states that the objective of the statute was to lower the premium costs for workers' compensation coverage. Fla. H.R. Comm. on Commerce, CS/HB 3809 and CS/HBs 2671, 1099, 1499, 1611, 2265, 2871, 2957, 3007, and 3135 (1990) Staff Analysis (final July 18, 1990) ("The bill revises the Workers' Compensation law in order to address the rising costs of worker's compensation insurance in the state. Though some reduction in benefit levels was necessary to bring about the desired reduction in costs, benefit levels were cut only as a last resort."). The goal of reducing the costs of premiums is not, "under the rational basis *358 test, an illegitimate or irrelevant consideration." Sasso, 431 So.2d at 220. Appellants have failed to meet their burden in establishing that there is no legitimate state purpose furthered by the termination of PTD supplemental benefits provision. We hold that the legislature's statutory objective satisfies the rational basis test and that sections 440.15(1)(e)1., Florida Statutes (1991) and 440.15(1)(f)1., Florida Statutes (1995) do not violate equal protection.
Accordingly, we find that Wilkins controls because both claimants herein were injured and reached PTD prior to age sixty-two, and they are, therefore, not entitled to supplemental benefits after age sixty-five; we further find the constitutional challenges lacking in merit; and we affirm the orders on appeal.
BENTON and POLSTON, JJ., CONCUR.
NOTES
[1] The language at issue, identical in both versions of the statute, is as follows: "Entitlement to these supplemental payments shall cease at age 62 if the employee is eligible for social security benefits under 42 U.S.C. §§ 402 and 423, whether or not the employee has applied for such benefits." § 440.15(1)(e)1., Fla. Stat. (1991), and § 440.15(1)(f)1., Fla. Stat. (1995).
[2] Initially, we note that age is not a suspect class. State v. T.M., 761 So.2d 1140, 1145-1146 (Fla. 2nd DCA 2000) (citing Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)); State v. Walborn, 729 So.2d 504, 505 (Fla. 2nd DCA 1999); Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983) (noting that "age has not as yet, for federal equal protection purposes, been determined either a suspect or quasi/suspect class."). "Age limitations and restrictions may survive a constitutional challenge and be enforced if they pass the `rational basis' test, i.e., the age classifications are reasonably related to a permissible governmental objective." Wright v. State, 739 So.2d 1230, 1232 (Fla. 1st DCA 1999).